Ernest Ray JERKINS et al., Petitioners,

v.

James R. McKINNEY, Respondent.

Supreme Court of Tennessee.

Jan. 19, 1976.

Joseph G. Cummings, Lewis H. Conner, Jr., Nashville, for petitioners; Dearborn & Ewing, Boult, Cummings, Conners & Berry, Nashville, of counsel.

Dick L. Lansden, Waller, Lansden, Dortch & Davis, Elkin Garfinkle, Nashville, for respondent.

## OPINION

HENRY, Justice.

These consolidated civil actions, filed pursuant to Rule 60.02, Tennessee Rules of Civil Procedure, seek to have the Court set aside an underlying judgment and award a new trial.

The Chancellor dismissed the suits on motion for summary judgment, but, on appeal,

the Court of Appeals reversed and remanded.

We granted certiorari primarily in order to construe and clarify Rule 60.02, Tenn.R. Civ.P.

## I.

This review is in the context of a complicated and unique actual background which must be noted as a prelude to the ensuing discussion.

The underlying judgment was rendered in a general creditor's suit in the Chancery Court at Nashville, wherein the petitioners in the instant suit sought and obtained a personal judgment against respondent. The record in the underlying suit was not made a part of the record in this suit. The pertinent facts, however, are not in dispute.

After the intervening petitioners in the general creditor's action had filed their petitions and after the respondent herein had answered, all parties filed motions for summary judgment, supported by affidavits. These motions were filed in May 1973.

On 4 May, 1973, at a hearing before the regular Chancellor of Part II of the Chancery Court at Nashville, counsel for the parties agreed that there were no issues of fact for determination; that the issues of law could and should be disposed of on the basis of the pleadings, the affidavits and briefs to be submitted, and without further argument or hearing.[1]

On 27 February, 1974, the regular Chancellor, who had previously expressed to counsel some misgivings as to the propriety of his sitting upon the case in view of the fact that respondent was a member of the bar who regularly appeared in his court, wrote the then Chief Justice asking permission to recuse himself. This was done without the knowledge of any counsel. In this letter the Chancellor pointed out that the case could be "determined upon motions, affidavits and briefs."

On 4 March, 1974, the Chief Justice designated Chancellor William H. Inman to hear and determine the controversy. Counsel were not advised of this action, and they did not learn of it until the following June.

By letter dated 22 March, 1974, Chancellor Inman advised the Clerk and Master at Nashville of his designation and requested that he "inquire of counsel of a mutually convenient trial date(s)." Counsel were not notified of this letter. The regular Chancellor advised the Clerk and Master that it would not be necessary to arrange a trial date since a hearing would not be necessary.

Subsequently, the regular Chancellor explained the situation to Chancellor Inman and advised him that the controversy was before him on the pleadings, etc., and that it had been agreed that the issues would be determined without a hearing.

On 23 May, 1974 [2] Chancellor Inman filed his opinion, but counsel did not receive a copy and, in fact, did not learn of this action until about a month thereafter.

After learning of the Chancellor's opinion counsel for the prevailing parties (the petitioners herein) prepared and forwarded to Chancellor Inman a judgment, which was signed and entered on 5 July, 1974.

On 25 July, 1974, respondent herein filed his motion for a new trial.

On 16 September, 1974, an order was entered overruling this motion. Counsel for the respective parties did not learn of this until late October, more than thirty days after the entry of the order overruling the motion for a new trial.

In the meantime on 15 October, 1974, attorney for the respondent in the instant suit wrote Chancellor Inman suggesting that they come to Morristown and argue

---

1. It should be noted that Dick L. Lansden, Esquire, who argued respondent's case at the bar at this Court, was not counsel of record at this time.

2. Respondent asserts this date to be 28 May, 1974, but this discrepancy is of no moment.

the motion for a new trial which he had already overruled without the knowledge of counsel. The Chancellor declined to hear argument but advised that if the record was not in shape for an appeal to "forward me an approved order so that it will be in shape." It was after the receipt of this letter that counsel for respondent learned of the 16 September, 1974 order.

Pursuant to this letter counsel for petitioners herein prepared and forwarded to Chancellor Inman another order overruling the motion for a new trial and granting thirty days for an appeal. This order was entered on 31 October, 1974.

Prior to the expiration of thirty days from and after the date of the entry of this order, counsel for petitioners herein advised respondent's counsel that if an appeal were perfected within the thirty day period from and after 31 October, 1974, they would interpose no objection to the timeliness of the appeal.

Respondent did not elect to take advantage of this waiver; instead he filed, on 13 November, 1974, two identical suits against petitioners herein. The only difference in these suits is that four of the petitioners are named in one suit and the remaining four in the other.

These suits allege that they are brought pursuant to Rule 60.02, Tenn.R.Civ.P., to set aside the underlying judgment upon the ground that respondent (defendant in original action) (1) had no notice of the proceedings; (2) no opportunity to be heard, and (3) that the proceedings constitute a denial of due process under the state and federal constitutions. They demand that the judgment be set aside, a new trial be awarded and defendants be enjoined from taking any steps to enforce the judgment.

All defendants to this suit (petitioners herein) moved to dismiss for failure to state a claim upon which relief can be granted.

These suits were assigned to Part I of the Chancery Court at Nashville. The regular Chancellor, after issuing the injunction prayed for, recused himself and the Chief Justice designated the Honorable Wil V. Doran to hear and determine the controversy.

The motion to dismiss was subsequently supported by affidavit and, pursuant to Rule 12.02, was correctly treated by the Chancellor as a motion for summary judgment and disposed of under Rule 56, Tenn. R.Civ.P.

In granting the motion for summary judgment the Chancellor held:

a. that respondent was not denied the right to a hearing on the motion for summary judgment;

b. that respondent was not afforded an opportunity for an oral hearing on his motion for a new trial;

c. that counsel for the parties were unaware of the order overruling the motion for a new trial until more than thirty days after its entry;

d. that on 31 October, 1974 an order was entered overruling the motion for a new trial and granting an appeal;

e. that no appeal was ever perfected;

f. that, under Rule 60, respondent had the right to appeal within 30 days from the 31 October order;

g. that under § 27–601 T.C.A. respondent "probably still has the right to appeal by way of writ of error";

h. that absent a showing of having exhausted his remedies in the underlying action, respondent has no right to maintain the present action.

■ Findings a. through e. represent findings of fact that are fully supported by the record and in which we concur. The conclusions of law are discussed hereinafter, as is the reasoning of the Court of Appeals in reversing the Chancellor.

II.

The Chancellor's first finding of fact, to the effect that respondent was not denied the right to a hearing on the motions for

summary judgment, was obviously grounded upon the solemn agreement of the parties, made in open court, that they would submit the case on the record and without argument.

The Court of Appeals was "inclined to agree" with respondent's argument that "waiver of oral hearing before one familiar jurist is an entirely different matter from general waiver before [another] jurist", and suggests that deciding the matter without giving the parties an opportunity to be heard was tantamount to a denial of due process.

We disagree.

■ There was nothing conditional about the agreement. This controversy was characterized by unfortunate failures of communication. We are cited to no case holding that a litigant has a right to be heard before a familiar or certain judge. In *State v. Bomer*, 179 Tenn. 67, 162 S.W.2d 515 (1942), the Court held:

> The law does not provide that notice shall be given to a litigant, whether plaintiff or defendant, of the interchange of judges. 162 S.W.2d at 519.

### III.

A substantial portion of respondent's case is premised upon the proposition that he had no notice of the disposition of his motion for a new trial and was afforded no opportunity to be heard.

The Court of Appeals treats this as tantamount to a denial of due process, and treats the entry of the order overruling the motion for a new trial as being a denial of the right to orderly appellate review.

We disagree on both counts.

■ First, we point out that a motion for a new trial is not a prerequisite for appellate review. Section 27–303 T.C.A. Since the motion itself is not critical, due process is not offended by denial of the opportunity for the presentation of argument.

In 5 Wright & Miller, *Federal Practice and Procedure*, § 1190, in commenting upon Rule 7(b) Fed.R.Civ.P., (the "motion rule"), the general rule is said to be:

> Due process does not require that oral argument be permitted on a motion, and, except as otherwise provided by local rule, the court has discretion to determine whether it will decide the motion on the papers or hear argument by counsel.

■ Oral argument is especially unnecessary when only questions of law are concerned. *Butterman v. Walston & Co.*, 50 F.R.D. 189 (E.D.Wis.1970).

The Tennessee Rules of Civil Procedure contain no requirement that trial judges permit argument on motions for a new trial, nor do the rules of practice of the chancery court, as incorporated in § 21–1401 T.C.A.

We do not for one instant minimize the importance of argument. We note with passing interest Chancellor Gibson's famous footnote 31 to § 546, *Gibson's Suits in Chancery* (5th ed.).

> In arguing a cause, lawyers should keep in mind that a Justice of the Peace needs less argument than a juror, that a Circuit Judge needs less than a Justice of the Peace, that a Chancellor needs less than a Circuit Judge, and that an Appellate Judge needs less than a Chancellor. Nevertheless, they are all benefited by sound argument, and especially by the production of pertinent law.

We note the first sentence; we quote with approval the last.

■ Throughout this opinion we bear in mind that at no place in the pleadings is there the slightest suggestion that the Chancellor decided the issues incorrectly— just that the parties did not have an opportunity to be heard.

■ We hold that prevailing and better practice is to permit oral argument on motions for a new trial; however, a failure to do so, in a civil case, does not invalidate the

action of the trial judge nor offend constitutional due process.

## IV.

▮ The entry of the order of 16 September, 1974, without notice to the litigants was, of course, a procedural error, but it in no sense deprived respondent of orderly appellate review. Respondent had three options open to him when he discovered, after the time for appeal had run, that an order overruling his motion for a new trial had been entered. In descending order of simplicity he might have:

a. appealed in reliance upon the waiver of timeliness;

b. filed a motion for relief under Rule 60.02, Tenn.R.Civ.P.;

c. filed a petition for writ of error.

The Court of Appeals held with respect to the waiver:

However praiseworthy the offer, it cannot substitute for the rights denied the appellant by the Procedure above recited [i. e. Rule 60 relief]. Litigant is entitled to proper and just procedure as a matter of right and not merely as a matter of grace or generosity of his adversary.

We don't fault this terminology, but "all roads lead to Rome". The only destination respondent sought was the Court of Appeals and the waiver guaranteed him free passage.

All the parties recognized the patent unfairness of denying respondent's appeal by the entry of an order which was more than thirty days old when he first learned of its existence. In the last analysis the agreement to the waiver of the time limit was merely the voluntary and informal invocation of the benefits of Rule 60.02, Tenn.R. Civ.P.

## V.

▮ The insistence is made, and the Court of Appeals held, that under § 27–312 T.C.A., where a judgment has been of record for thirty days, the trial judge is without authority to set it aside and re-enter the same for the purpose of allowing an appeal. *Wright v. Dorman*, 155 Tenn. 189, 291 S.W.2d 1064 (1927); *Memphis & Charleston Railroad Co. v. Johnson*, 84 Tenn. 387 (1886).

With this general statement of the law, we are in accord; however, the rigidity of this rule was substantially relaxed by the adoption of Rule 60, Tenn.R.Civ.P., which facially provides relief against final judgments. To hold otherwise would cut the heart out of the rule and destroy all reason for its existence. Courts have always had the authority to modify, alter, amend or revoke judgments and decrees before they become final. It was the unyielding demands of the old rule of rigidity that prompted Rule 60.

## VI.

Rule 60, Tenn.R.Civ.P., like its federal counterpart, was designed to strike a proper balance between the competing principles of finality and justice.

It specifies fourteen grounds upon which relief may be granted, plus a catch-all ground, viz.: any other reason justifying relief. It provides for two types of procedure, i. e. (1) motion and (2) independent suit. It abolishes the ancillary remedies of writ of error coram nobis, bills of review and bills in the nature of a bill of review.

We do not here deal with Rule 60.01, since this rule is designed to afford relief in those character of cases wherein the judgment or order, either standing alone, or when viewed in connection with other portions of the record, shows facially that it contains errors arising from oversight or omission.

▮ Nor are we concerned with Rule 60.-02(5), which provides relief for "any other reason", since this section is designed to meet unique or exceptional or extraordinary circumstances. *Ackermann v. U. S.*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950).

■ We think the facts of this case justify the invocation of Sec. 60.02(1) providing relief against a judgment for "mistake, inadvertence, surprise or excusable neglect." There is no merit to the insistence that Rule 60.02 applies only to acts of omission or commission of the parties.

In 7 Moore's Federal Practice, Sec. 60.-22[2], page 247, in discussing Rule 60(b)(1) (identical with Tennessee Rule 60.02(1)), after commenting on the old rule which restricted relief to cases involving movant's mistakes, etc., it is said:

> Relief can now be had under 60(b)(1) not only for the mistake, etc. of the moving party, but also from that of other parties to the action, the *clerk*, and *even the court.* (Emphasis supplied).

We hold that the failure of the clerk to provide counsel with a copy of the order overruling the motion for a new trial, or to notify them of its existence, as to counsel, constituted excusable neglect justifying relief under Rule 60.02(1).

The action of Chancellor Inman in directing the re-entry of the order of 16 September, 1974, overruling the motion for a new trial, was obviously predicated upon Rule 60.02(1). This is the interpretation Chancellor Doran placed upon it by the use of the following language in his final decree in the instant cause:

> . . . that pursuant to Rule 60 of the Tennessee Rules of Civil Procedure, the Court is of the opinion that the plaintiff herein had the right to appeal within 30 days from the October 31, 1974 order . . .

It is obvious that Chancellor Inman was of the opinion that the re-entry of the decree so as to start the time for an appeal running anew was appropriate relief under Rule 60.02(1). We agree. In fact, under the circumstances of this case, this was virtually the exclusive remedy.

■ We further hold, in connection with Rule 60.02(1) relief, that when facts and circumstances indicating a necessity for such relief come to the attention of the Court, there is no necessity to await the filing of a formal motion. The trial court may *sua sponte* grant the relief. In this case Chancellor Inman was fully justified in acting upon the basis of correspondence from counsel.

## VII.

A more difficult issue for resolution is whether an independent action was proper under the facts and circumstances here presented. In the absence of Tennessee authority we are forced to look to treatises and cases construing the similar federal rule. We note from 11 Wright & Miller, *Federal Practice and Procedure*, Sec. 2868, that

> Resort to an independent action may be had only rarely, and then only under unusual and exceptional circumstances.

From the same source we note that the corresponding provision of the federal rule, relating to "independent action" is "what had been historically known simply as an independent action in equity to obtain relief from a judgment."

Rule 60.02, in this particular reads:

> This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court.

The ensuing sentence abolishes writs of error coram nobis, bills of review and bills in the nature of a bill of review. This leaves intact the old equitable remedy of a suit to impeach or set aside a judgment or decree for fraud, accident, surprise or mistake. See §§ 981 and 1272, *Gibson's Suits in Chancery*, (5th ed.).

■ We adopt the following language from *Winfield Associates, Inc. v. Stonecipher*, 429 F.2d 1087 (10th Cir. 1970):

> Generally, such an independent action must show a recognized ground, such as fraud, accident, mistake or the like, for equitable relief and that there is no other available or adequate remedy. It must

also appear that the situation in which the party seeking relief finds himself is not due to his own fault, neglect or carelessness. In this type of action, it is fundamental that equity will not grant relief if the complaining party 'has, or by exercising proper diligence would have had, an adequate remedy at law, or by proceedings in the original action * * to open, vacate, modify or otherwise obtain relief against, the judgment.' The granting of relief in this unusual type of proceeding lies largely within the discretion of the trial judge. 429 F.2d at 1090.

Respondent, in the instant case, was the victim of mistake, inadvertence, surprise and excusable neglect of others and was himself free from fault, neglect or carelessness. However, he had available at the time he filed these independent actions three complete and adequate remedies, viz. (1) a Rule 60.02(1) motion in the underlying suit, (2) an appeal pursuant to the waiver, and (3) appeal via writ of error.

■ We, therefore, hold that he could not maintain these independent actions. We do not wish to be understood as holding that an independent action will never lie. We do not so hold. Nor do we hold that a new trial is inappropriate relief under Rule 60. In some cases it may be entirely proper. But in the context of this case where there is no attack made on the merits of the judgment, where the only deficiencies were procedural irregularities, correctible in the main suit, or reviewable by appeal or writ of error, and where the basic relief sought is a new trial without any defect affecting the merits, we consider an independent action to be improper and so hold.

### VIII.

Having held that the decree of 16 September, 1974, was the product of mistake, inadvertence, surprise or excusable neglect, and that it is not correctible in these independent actions, the final question for determination is the type of relief to which respondent is entitled.

He did not elect to pursue the appeal pursuant to waiver and that remedy is no longer available to him.

He did not elect to pursue his appeal pursuant to the re-entry of the decree on 31 October, 1974, and the time has now elapsed for doing so.

His only remaining remedy is by writ of error. The Court of Appeals, with respect to this procedure, said, in pertinent part:

Appellee also argues that the right of writ of error remains available to appellant; but such right is usually an empty one without the benefit of a bill of exceptions. Moreover, the right of writ of error does not include all of the benefits of an appeal, hence cannot be a complete substitute therefor.

Again, we most respectfully differ with the Court of Appeals.

■ In the underlying case there was no necessity for a bill of exceptions, since the motions for summary judgments and supporting affidavits will appear as a part of the technical record. The only marked difference between a writ of error and an appeal in the nature of a writ of error is that the appeal in error suspends execution of the judgment, while the writ of error does not. Higgins and Crownover, *Tennessee Procedure in Law Cases,* § 1932 (1937); *Caruthers' History of a Lawsuit,* § 449 (8th ed. 1963).

This is the only remedy now available to respondent.

The injunction heretofore issued in the Chancery Court enjoining the collection of the judgment against respondent is dissolved, but with leave to apply to the Court of Appeals for supersedeas within thirty days from and after the release of this opinion.

The judgment of the Court of Appeals is

Reversed.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.